STONE;  Penamon, Appellant,

v.

HOUSE OF DAY FUNERAL SERVICE, INC.;  Long, Appellee.

[Cite as *Stone v. House of Day Funeral Serv., Inc.* (2000), 140 Ohio App.3d 713.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–00–1085.

Decided Dec. 29, 2000.

714

*Alan W. Penamon, pro se.*

*Laura Wagner,* for appellee.

KNEPPER, Presiding Judge.

This is an appeal from a judgment of the Toledo Municipal Court which granted the motion for sanctions filed by appellee Doris Long against appellant Alan W. Penamon and denied appellant's motion to strike the motion for sanctions. For the reasons that follow, this court affirms and adopts the well reasoned decision of the trial court.

Appellant sets forth the following assignments of error:

"I. The trial court erred in denying the Motion to Strike defendant Doris Long's Motion for Sanctions filed May 4, 1999 though unreported cases were cited in the memorandum accompanying defendant Long's Motion for Sanctions and copies of those cases were not attached. [Decision and Judgment Entry 2/16/00].

"II. The trial court erred in finding that Appellant engaged in frivolous conduct under Civil Rule 11 and ORC § 2323.51 relating to his pursuing claims on behalf of Bobby Ray Stone as the personal representative of the estate of Leola Simpson. [Decision and Judgment Entry 2/16/00].

"III. The trial court erred in finding that Appellant engaged in frivolous conduct under Civil Rule 11 and ORC § 2323.51 relating to his pursuing claims on behalf of Bobby Ray Stone as son of Leola Simpson. [Decision and Judgment Entry 2/16/00]."

We have carefully examined the entire record in this matter, including the opinion and judgment entry prepared by the trial court. We conclude that the trial court has correctly considered the pertinent facts in this dispute and correctly applied the law to the facts and rendered judgment accordingly. Therefore, we adopt the decision of the trial court, insofar as it relates to the dispute between the parties herein, as our own. (See Appendix A.)

Based upon our adoption of the trial court's opinion and judgment entry, we find appellant's assignments of error not well taken. On consideration whereof, this court finds that substantial justice has been done the party complaining and the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

SHERCK and GEORGE M. GLASSER, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.

### APPENDIX A

Decided Feb. 16, 2000

THOMAS J. OSOWIK, Judge.

This cause is before the court for ruling on defendant Doris Jean Long's motion for sanctions pursuant to Civ.R. 11 and R.C. 2323.51.

The following is the factual background of this case:

● On or about February 16, 1996, Leola Simpson died at 836 Vinton in Toledo, Lucas County, Ohio, the home of Doris Jean Long (hereinafter "defendant Long").

● Defendant Long contracted with House of Day Funeral Service, Inc. (hereinafter "defendant House of Day") to coordinate the disposition of Leola Simpson's body.

• Upon hearing of the death of Leola Simpson, Bobby Ray Stone (hereinafter "plaintiff Stone") contacted defendant House of Day and requested that the decedent's body be released to him for funeral arrangements.

• It is disputed whether plaintiff Stone is the son of Leola Simpson.

• Defendant House of Day did not release the decedent's body to plaintiff Stone and the decedent's remains were cremated at the direction of defendant Long.

The following is a synopsis of the procedural history of this case:

• On February 17, 1998, plaintiffs Bobby Ray Stone, individually (hereinafter "plaintiff Stone"), and Bobby Ray Stone, as personal representative of the estate of Leola Simpson, deceased, (hereinafter "plaintiff Stone, as personal representative") filed a complaint against defendants House of Day Funeral Service, Inc. and Doris Jean Long (hereinafter "defendant House of Day" and "defendant Long").

• The case was assigned to this court's docket on March 17, 1998.

• Defendant House of Day filed its answer on April 21, 1998.

• On June 22, 1998, plaintiff Stone, as personal representative, voluntarily dismissed his case against defendants.

• On September 15, 1998, defendant Long filed her answer, with affirmative defenses and a motion to dismiss. The court denied defendant Long's motion to dismiss.

• On November 18, 1998, defendant House of Day filed a motion for summary judgment and a motion for sanctions. The court denied defendant House of Day's motion for sanctions. Further, defendant House of Day's motion for summary judgment was denied because defendant House of Day failed to properly file plaintiff Stone's deposition with the court in accordance with Civ.R. 30(F).

• On December 2, 1998, defendant Long filed a motion to remove and consolidate this case with a case pending in Lucas County Common Pleas Court. Defendant Long's motion to remove and consolidate was denied because the court lacked jurisdictional authority to order such transfer.

• On January 22, 1999, defendant House of Day resubmitted its motion for summary judgment and properly filed plaintiff Stone's deposition with the court. Defendant House of Day's motion for summary judgment was granted and the complaint was dismissed against defendant House of Day.

• On March 10, 1999, defendant Long filed a motion for summary judgment. The basis of the motion was that plaintiff Stone lacked standing to bring an action

against defendant Long. The court denied defendant Long's motion for summary judgment due to the existence of a birth certificate from the state of Texas alleging that Bobby Ray Stone was the son of Leola Simpson.

• The case was scheduled for jury trial on April 14, 1999. On the day of trial, plaintiff Stone voluntarily dismissed the case, without prejudice, pursuant to Civ.R. 41(A)(1)(a).

• On April 20, 1999, defendant Long, through her counsel, filed a motion for sanctions.

• The court set a date for hearing on the motion for sanctions, gave notice of the date of hearing, and a hearing was held on September 16, 1999.

Although a voluntary dismissal under Civ.R. 41(A)(1)(a) generally divests a trial court of jurisdiction, a hearing on sanctions is considered collateral to the underlying proceedings. Thus, a trial court retains jurisdiction for the limited purpose of considering a motion for sanctions pursuant to Civ.R. 11 and R.C. 2323.51. *Industrial Risk Insurers v. Lorenz Equip.* Co. (1994), 69 Ohio St.3d 576, 580, 635 N.E.2d 14, 17–18, citing *Cooter & Gell v. Hartmarx Corp.* (1990), 496 U.S. 384, 396–397, 110 S.Ct. 2447, 2456–2457, 110 L.Ed.2d 359, 375–377; *Kracht v. Kracht* (June 5, 1997), Cuyahoga App. Nos. 70005 and 70009, unreported, 1997 WL 298265; *Blackburn v. Lauder* (Nov. 12, 1996), Lawrence App. No. 96CA5, unreported, 1996 WL 666658; *Lewis v. Celina Fin. Corp.* (1995), 101 Ohio App.3d 464, 655 N.E.2d 1333; *Schwartz v. Gen. Acc. Ins. of Am.* (1993), 91 Ohio App.3d 603, 632 N.E.2d 1379. Therefore, the court finds that it has jurisdiction to consider a motion for sanctions pursuant to Civ.R. 11 and R.C. 2323.51 even after a voluntary dismissal under Civ.R. 41(A)(1)(a).

The court further finds that defendant Long has filed a motion for sanctions pursuant to Civ.R. 11 against plaintiff's counsel, Alan Penamon (hereinafter "Penamon"). Additionally, defendant Long has filed a motion for sanctions pursuant to R.C. 2323.51 against both plaintiff Stone and Penamon.

In response to defendant Long's motion for sanctions, plaintiff Stone and Penamon filed a motion to strike. The reasons for the motion to strike are as follows:

1. Defendant Long's motion for sanctions includes no less than fifteen citations to unreported cases without attaching copies of the opinions. (Plaintiff Stone's and Penamon's Motion to Strike, Page 1.)

2. Defendant Long's motion for sanctions lacks the requisite clarity with respect to addressing specific pleadings and papers filed with the court in this matter. (Plaintiff Stone's and Penamon's Motion to Strike, Page 1.)

■ With respect to defendant Long's failure to attach copies of unreported cases to the motion for sanctions, the court is not inclined to strike the motion for sanctions. The court finds that the citations provided in the motion for sanctions to be adequate. Further, the court finds that it was able to locate and review the unpublished opinions without undue effort. Therefore, plaintiff Stone's and Penamon's motion to strike because defendant Long failed to attach copies of unpublished opinions to the motion for sanctions is found not well taken and denied.

■ With respect to defendant Long's failure to identify with particularity which papers filed with the court are in violation of Civ.R. 11 and R.C. 2323.51, the court is not inclined to strike the motion for sanctions. The court finds that defendant Long alleges that the filing of the complaint is in violation of Civ.R. 11 and R.C. 2323.51. Further, the court finds that defendant Long alleges that all additional papers filed in furtherance of the claim are in violation of Civ.R. 11 and R.C. 2323.51. Therefore, plaintiff Stone's and Penamon's motion to strike because defendant Long failed to identify with particularity which papers filed with the court are in violation of Civ.R. 11 and R.C. 2323.51 is found not well taken and denied.

Having denied plaintiff Stone's and Penamon's motion to strike, the court will now address defendant Long's motion for sanctions pursuant to Civ.R. 11 and R.C. 2323.51.

Rule 11 of the Ohio Rules of Civil Procedure states as follows:

"The signature of an attorney * * * constitutes a certificate by the attorney * * * that the attorney * * * has read the document; that to the best of the attorney's * * * knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with the intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule an attorney * * *, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule. Similar action may be taken if scandalous or indecent matter is inserted."

■ Therefore, the purpose of Civ.R. 11 is to ensure that a pleading is filed in good faith with adequate supporting grounds. *Muskovitz v. Mt. Sinai Med. Ctr.* (Jan. 7, 1993), Cuyahoga App. Nos. 60464 and 61166, unreported; *Stevens v. Kiraly* (1985), 24 Ohio App.3d 211, 24 OBR 388 494 N.E.2d 1160.

In ruling on a motion for sanctions made pursuant to Civ.R. 11, the court "must consider whether the attorney signing the document (1) has read the pleading, (2) harbors good grounds to support it to the best of his or her knowledge, information, and belief, and (3) did not file it for purposes of delay." *Ceol v. Zion Indus., Inc.* (1992), 81 Ohio App.3d 286, 290, 610 N.E.2d 1076. 1078. If the court determines that any of these requirements has not been met, it must then determine "whether the violation was 'willful' as opposed to merely negligent." *Haubeil & Sons Asphalt & Materials, Inc. v. Brewer & Brewer Sons, Inc.* (1989), 57 Ohio App.3d 22, 23, 565 N.E.2d 1278, 1279. If the court determines that the violation was willful, it may impose appropriate sanctions. *Taylor v. Franklin Blvd. Nursing Home, Inc.* (1996), 112 Ohio App.3d 27, 677 N.E.2d 1212; *Kester v. Rodgers* (May 6, 1994), Lake App. Nos. 93–L–056 and 93–L–072, unreported, 1994 WL 188918. Finally, the court is granted wide latitude in determining whether sanctions are appropriate and what type of sanction is appropriate in a given case. *Woods v. Savannah Foods & Indus., Inc.* (Feb. 26, 1993), Lucas App. No. L–92–160, unreported, 1993 WL 49796; *Stevens v. Kiraly* (1985), 24 Ohio App.3d 211, 213, 24 OBR 388, 390–391, 494 N.E.2d 1160, 1163–1164.

The court finds that Civ.R. 11 employs a subjective bad faith standard. Therefore, in order to rule on the motion for sanctions pursuant to Civ.R. 11, the court must determine if Penamon willfully violated this rule. Defendant Long alleges that Penamon did· not file the complaint in good faith with adequate supporting grounds. Specifically, Penamon did not have good grounds to support the claim to the best of his knowledge, information, and belief. Further, defendant Long claims that Penamon's violation of Civ.R. 11 was willful, as opposed to negligent, and Penamon should be subject to appropriate sanctions.

In contrast to Civ.R. 11, R.C. 2323.51 employs an objective standard in determining whether sanctions may be imposed against either counsel or a party for frivolous conduct. *Kester v. Rodgers* (May 6, 1994), Lake App. Nos. 93–L–056 and 93–L–072, unreported, 1994 WL 188918. In ruling· on a motion for sanctions made pursuant to R.C. 2323.51, the court must determine whether a party engaged in frivolous conduct. "Conduct" is defined in R.C. 2323.51(A)(1)(a) as follows:

"The filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, filing a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action."

Moreover, R.C. 2323.51(A)(2)(a) defines "frivolous conduct" as conduct of a party, or of his counsel of record, that satisfies any of the following:

"(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or needless increase in the cost of litigation.

"(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

"(iii) Allegations or other factual contentions have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

"(iv) Denials or factual contentions are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief."

■ If the court determines that a party engaged in frivolous conduct, it must then determine whether the moving party was adversely affected. *Ceol v. Zion Indus., Inc.* (1992), 81 Ohio App.3d 286, 290, 610 N.E.2d 1076, 1078. *Youssef v. Jones* (1991), 77 Ohio App.3d 500, 510, 602 N.E.2d 1176, 1182–1183. Finally, if an adverse affect can be shown, the court must determine the amount of the award. *Wiltberger v. Davis* (1996), 110 Ohio App.3d 46, 53–54, 673 N.E.2d 628, 632–634.

■ Pursuant to R.C. 2323.51(B)(1), a court may award reasonable attorney fees to any party in a civil action adversely affected by frivolous conduct. An award under this statute is discretionary; consequently, absent an abuse of discretion, a decision to impose sanctions pursuant to R.C. 2323.51(B)(1) will not be reversed. *Buettner v. Bader* (Jan. 9, 1998), Lucas App. No. L–97–1106, unreported, 1998 WL 30539; *Shaffer v. Mease* (1991), 66 Ohio App.3d 400, 407, 584 N.E.2d 77, 82.

R.C. 2323.51(B)(1) further states that a motion for sanctions must be filed before trial or within twenty-one days of the entry of judgment. *Kester v. Rodgers* (May 6, 1994), Lake App. Nos. 93–L–056 and 93–L–072, unreported, 1994 WL 188918; *Justice v. Lutheran Social Serv. of Cent. Ohio* (1992), 79 Ohio App.3d 439, 607 N.E.2d 537; *Edinger v. DeRail, Inc.* (Apr. 12, 1991), Lucas App. No. L–90–158, unreported, 1991 WL 53777. The court finds that plaintiff Bobby Ray Stone's voluntary dismissal was filed on April 14, 1999; and defendant Long's motion for sanctions was filed on April 20, 1999. Therefore, the court finds that defendant Long's motion for sanctions was timely filed.

R.C. 2323.51(B)(2) sets forth the procedure a court must follow prior to awarding reasonable attorney fees to a party adversely affected by frivolous conduct. The court must:

"(a) Sets a date for a hearing to determine: (1) whether particular conduct was frivolous; (2) if the conduct was frivolous, whether any party was adversely affected by it; and (3) if an award is to be made, the amount of that award.

"(b) Give notice of the date of the hearing to each party or counsel of record who allegedly engaged in frivolous conduct and to each party who allegedly was adversely affected by frivolous conduct.

"(c) Conduct the hearing and allow the parties and counsel of record involved to present any relevant evidence at the hearing, determine that the conduct involved was frivolous and that a party was adversely affected by it, and then determine the amount of the award to be made."

In accordance with R.C. 2323.51(B)(2), the court set a date for hearing on the motion for sanctions, gave notice of the date of hearing, and the hearing was held on September 16, 1999.

R.C. 2323.51(B)(4) provides that an award of attorney's fees "may be made against a party, the parties counsel of record, or both." *See, also, Scheiderer & Assoc. v. London* (1998), 81 Ohio St.3d 94, 95, 689 N.E.2d 552, 552. The objective of the statute is to impose sanctions on the person actually responsible for the frivolous conduct. *Scheiderer* at 97, 689 N.E.2d at 554. Moreover, sanctions may be imposed both jointly and severally upon both plaintiff and counsel, if the conduct so warrants. *Blackburn v. Lauder* (Nov. 12, 1996), Lawrence App. No. 96CA5, unreported, 1996 WL 666658; *Estep v. Kasparian* (1992), 79 Ohio App.3d 313, 317, 607 N.E.2d 109, 112; *Shaffer v. Mease* (1991), 66 Ohio App.3d 400, 410, 584 N.E.2d 77, 83–84. Additionally, an award for attorney fees pursuant to R.C. 2323.51 may include fees incurred in prosecuting a motion for sanctions. *Scheiderer & Assoc. v. London* (1998), 81 Ohio St.3d 94, 95, 689 N.E.2d 552, 552. In *Scheiderer,* the Ohio Supreme Court stated that R.C. 2323.51 "gave courts the discretion to hold those engaging in frivolous conduct responsible for their actions." *Id.* The Ohio Supreme Court further stated:

"[W]e observe that the risk of a motion for sanctions under the statute is one that an attorney should anticipate when filing a complaint. We have no desire to cause a chilling effect on the duty of counsel to vigorously represent their client. Counsel, however, must balance that duty with their concomitant obligation to the bar, the court, and their client to perform responsibly *"within the bounds of the law."* See Canon 7, EC 7–1." (Emphasis *sic.*) *Id.* at 97, 689 N.E.2d at 554.

The court finds that R.C. 2323.51 employs an objective standard in determining whether sanctions may be imposed against either counsel or a party for frivolous conduct. Therefore, in order to sanction plaintiff Stone and/or Penamon, the court must determine whether plaintiff Stone and/or Penamon

engaged in frivolous conduct. As noted earlier, R.C. 2323.51(A)(2)(a) defines frivolous conduct. Additionally, Ohio case law has defined what constitutes frivolous conduct. For example, a counsel's failure to adequately investigate a claim can constitute frivolous conduct under the statute. *See Lewis v. Celina Fin. Corp.* (1995), 101 Ohio App.3d 464, 473, 655 N.E.2d 1333, 1339; *Stephens v. Crestview Cadillac, Inc.* (1989), 64 Ohio App.3d 129, 132–133, 580 N.E.2d 842, 844–845.

In defendant Long's memorandum in support of the motion for sanctions, defendant Long sets forth several instances where Penamon allegedly violated Civ.R. 11 and where plaintiff Stone and/or Penamon allegedly violated R.C. 2323.51. The following is an outline of defendant Long's allegations:

"1) Penamon filed the complaint on behalf of Bobby Ray Stone, individually, and Bobby Ray Stone, as·personal representative of the estate of Leola Simpson, despite actual knowledge that Doris Long was approved as the personal representative of the estate of Leola Simpson. Penamon acquired this knowledge because he participated as counsel for Bobby Ray Stone in a contested hearing in Lucas County Probate Court to remove Doris Long as the personal representative of the estate of Leola Simpson. The Lucas County Probate Court denied Bobby Ray Stone's motion to remove Doris Long as the personal representative of the estate of Leola Simpson. [Defendant Long's Motion for Sanctions, Page 16.]

"2) Although Penamon later dismissed the claim of plaintiff Stone, as personal representative, Penamon continued to proceed on the claim of plaintiff Stone, individually, despite acknowledging that the claim had no basis in law. [Defendant Long's Motion for Sanctions, Page 16.]

"3) Penamon instituted and pursued this action despite actual knowledge that Bobby Ray Stone's prior counsel did not believe that Bobby Ray Stone was in fact the son of Leola Simpson. Additionally, Penamon filed suit against Doris Long even though Bobby Ray Stone's prior actions were held fraudulent by the Lucas County Probate Court. [Defendant Long's Motion for Sanctions, Page 16.]

"4) Penamon filed the complaint without having his client read the complaint. [Defendant Long's Motion for Sanctions, Page 17.]

"5) Although the complaint has no basis for recovery under law, Penamon filed the complaint. First, there is no tort for wrongful burial. Second, the tort of negligent infliction of emotional distress based upon the mishandling or desecration of a corpse requires a showing of desecration or abuse of the dead body or willful, intentional or outrageous mishandling of the corpse. Additionally, the resultant injuries must be serious and reasonably foreseeable. [Defendant Long's Motion for Sanctions, Page 17.]

"6) Penamon filed the complaint containing a claim of wrongful possession of a dead body, even though only the personal representative of the estate of the decedent can file such a claim. Because Bobby Ray Stone is not the personal representative of the estate of Leola Simpson, this claim is not warranted under existing law. [Defendant Long's Motion for Sanctions, Page 17.]

"7) The criminal offense of abuse of a corpse requires treatment of a human corpse in a way that would outrage reasonable family or community sensibilities, and was intended to prevent grave robbing, unlawful dissection, and copulating with a dead body. Nowhere in Penamon's allegations is such action alleged; therefore, filing and proceeding under this claim is sanctionable under Civ.R. 11. [Defendant Long's Motion for Sanctions, Pages 17–18.]

"8) The claim of intentional infliction of emotional distress is unfounded because plaintiff Stone has never alleged 'extreme and outrageous' conduct. Further, plaintiff Stone has never alleged that Defendant Long intended to cause such distress, or should have known such distress would result. Consequently, Penamon's filing and proceeding on a claim of intentional infliction of emotional distress is sanctionable under Civ.R. 11. [Defendant Long's Motion for Sanctions, Page 18.]

"9) Penamon's filing and proceeding on a claim of intentional interference with contractual relations is also sanctionable under Civ.R. 11 because the facts of the complaint, even if true, do not amount to the commission of this tort. [Defendant Long's Motion for Sanctions, Page 18.]

"10) Finally, Penamon's filing and proceeding on a claim of civil conspiracy warrants sanctions because civil conspiracy requires an underlying unlawful act, and plaintiff Stone has alleged no unlawful acts. Additionally, plaintiff Stone has presented no claim of actual damage, a required element of a civil conspiracy. [Defendant Long's Motion for Sanctions, Page 18.]"

In determining whether Penamon willfully violated Civ.R. 11 or whether plaintiff Stone and/or Penamon engaged in frivolous conduct pursuant to R.C. 2323.51, the court will address each allegation contained in defendant Long's motion for sanctions.

With respect to the first allegation, defendant Long alleges that Penamon willfully violated Civ.R. 11 when he filed the complaint on behalf of Bobby Ray Stone, individually, and Bobby Ray Stone, as personal representative of the estate of Leola Simpson, despite actual knowledge that Doris Long was approved as the personal representative of the estate of Leola Simpson. (Defendant Long's Motion for Sanctions, Page 16.) Further, defendant Long asserts that Penamon acquired this knowledge because he participated as counsel for Bobby Ray Stone in a contested hearing in Lucas County Probate Court to remove

Doris Long as the personal representative of the estate of Leola Simpson. (Defendant Long's Motion for Sanctions, Page 16.) Moreover, Penamon received notice that the Lucas County Probate Court denied Bobby Ray Stone's motion to remove Doris Long as the personal representative of the estate of Leola Simpson. (Defendant Long's Motion for Sanctions, Page 16.)

The court finds that the judgment entry of the Lucas County Probate Court approving Doris Long as the personal representative of the estate of Leola Simpson was filed on September 6, 1996. Further, the court finds that Penamon filed the complaint on behalf of Bobby Ray Stone, as personal representative of the estate of Leola Simpson, on February 16, 1998. Therefore, the court finds that Penamon had actual knowledge that Doris Long, not Bobby Ray Stone, was the court-approved personal representative of the estate of Leola Simpson. Accordingly, Penamon harbored no good grounds to support the filing of the complaint on behalf of plaintiff Stone, as personal representative. The court further finds that Penamon willfully violated Civ.R. 11 when he filed the complaint on behalf of Plaintiff Stone, as personal representative, because Penamon had knowledge of the Lucas County Probate Court ruling. Therefore, the court finds Penamon to be in violation of Civ.R. 11. The court notes that Penamon dismissed the complaint of plaintiff Stone, as personal representative, on June 22, 1998. Consequently, any expenses and reasonable attorney fees incurred by defendant Long from the filing of the complaint (February 17, 1998) to dismissal (June 22, 1998), including any expenses and reasonable attorney fees incurred in bringing this motion, are hereby assessed to Penamon as appropriate sanctions for willfully violating Civ.R. 11.

Moreover, the court finds that Penamon engaged in frivolous conduct when he filed the complaint on behalf of plaintiff Stone, as personal representative, because Penamon had knowledge of the Lucas County Probate Court ruling. Therefore, the court finds that the filing of the complaint on behalf of plaintiff Stone, as personal representative, was done to harass and maliciously injure defendant Long. Further, the court finds that Penamon's actions increased the cost of litigation for defendant Long; thus, adversely affecting defendant Long. As noted above, Penamon dismissed the complaint of plaintiff Stone, as personal representative, on June 22, 1998. Consequently, any expenses and reasonable attorney fees incurred by defendant Long from the filing of the complaint (February 17, 1998) to dismissal (June 22, 1998), including any expenses and reasonable attorney fees incurred in bringing this motion, are hereby assessed to Penamon as appropriate sanctions for engaging in frivolous conduct pursuant to R.C. 2323.51.

With respect to the second allegation, defendant Long alleges that although Penamon later dismissed the claim of plaintiff Stone, as personal representative,

Penamon continued to proceed on the claim of plaintiff Stone, individually, despite acknowledging that the claim had no basis in law. (Defendant Long's Motion for Sanctions, Page 16.) The court finds that nowhere in defendant Long's memorandum in support of the motion for sanctions does defendant Long offer evidentiary support that such an acknowledgement was made by Penamon. Further, nothing in the case file indicates that Penamon made such an acknowledgment. Additionally, Penamon made no such acknowledgement at the sanctions hearing. Therefore, defendant Long's second allegation is found not well taken and denied.

With respect to the third allegation, defendant Long alleges that Penamon instituted and pursued this action despite actual knowledge that Bobby Ray Stone's prior counsel did not believe he was the son of Leola Simpson. (Defendant Long's Motion for Sanctions, Page 16.) Moreover, defendant Long asserts that Penamon is subject to sanctions pursuant to Civ.R. 11 because he filed suit against Doris Long even though Bobby Ray Stone's prior actions were held fraudulent by the Lucas County Probate Court. (Defendant Long's Motion for Sanctions, Pages 16–17.) Additionally, defendant Long claims that Penamon willfully violated Civ.R. 11 by filing suit against Doris Long and alleging that plaintiff Stone was the son of Leola Simpson. (Defendant Long's Motion for Sanctions, Pages 16–17.)

The court finds that at the sanctions hearing, Penamon asserted that his client presented to him a "delayed" birth certificate alleging that he was the son of Leola Simpson. Penamon stated that the birth certificate appeared valid on its face and gave him "no cause for pause." Further, Penamon testified that his client told him that he was the son of Leola Simpson and Penamon believed him without conducting independent research. Penamon claimed that it was reasonable for him to believe the validity of the birth certificate and his client's representations. However, the court finds that Penamon did not harbor good grounds to support the filing of the complaint to the best of his knowledge, information, and belief. The court reaches this conclusion because the "delayed" birth certificate that Penamon relied on when he filed the complaint was a Texas birth certificate issued in 1997 where the informant was Bobby Ray Stone.

The court further finds that Penamon should have conducted independent research into the validity of plaintiff Stone's assertions. Moreover, the court finds that this was a willful violation of Civ.R. 11, as opposed to mere negligence, because Penamon had actual knowledge that a similar procedure was used in Lucas County Probate Court and held fraudulent. Therefore, any expenses and reasonable attorney fees incurred by defendant Long as a result of Penamon filing and pursuing this action, including any expenses and reasonable attorney

fees incurred in bringing this motion, are hereby assessed to Penamon as appropriate sanctions for willfully violating Civ.R. 11.

Moreover, the court finds that Penamon engaged in frivolous conduct by filing suit against defendant Long and alleging that plaintiff Stone was the son of Leola Simpson. While attorneys do not act in bad faith or engage in frivolous conduct if they reasonably rely on the representations of the injured party and/or his family members or representatives to form a basis for a complaint, the facts before the court establish that counsel in this case did not have any basis to reasonably rely on the representations and assertions of plaintiff Stone. *See Newman v. Al Castrucci Ford Sales, Inc.* (1988), 54 Ohio App.3d 166, 169–170, 561 N.E.2d 1001, 1004–1005. Thus, the court finds that filing suit against defendant Long and alleging that plaintiff Stone was the son of Leola Simpson was done to harass and maliciously injure defendant Long. Further, the court finds that Penamon's actions increased the cost of litigation for defendant Long, thus adversely affecting defendant Long. Therefore, any expenses and reasonable attorney fees incurred by defendant Long as a result of Penamon filing and pursing this action, including any expenses and reasonable attorney fees incurred in bringing this motion, are hereby assessed to Penamon as appropriate sanctions for engaging in frivolous conduct pursuant to R.C. 2323.51.

■ With respect to the fourth allegation, defendant Long alleges that Penamon is subject to sanctions because he filed the complaint without having his client read the complaint. (Defendant Long's Motion for Sanctions, Page 17.) The court does not find this conduct to be a violation of either Civ.R. 11 or R.C. 2323.51. Therefore, defendant Long's fourth allegation is found not well taken and denied.

With respect to the fifth allegation, defendant Long asserts that even if plaintiff Stone is the son of Leola Simpson, the complaint has no basis for recovery under law and Penamon should be sanctioned for filing and pursuing such a claim. (Defendant Long's Motion for Sanctions, Page 17.) First, defendant Long alleges that there is no tort for wrongful burial. (Defendant Long's Motion for Sanctions, Page 17.) Second, defendant Long asserts that the tort of negligent infliction of emotional distress based upon the mishandling or desecration of a corpse requires a showing of desecration or abuse of the dead body or willful, intentional or outrageous mishandling of the corpse. (Defendant Long's Motion for Sanctions, Page 17.) Additionally, defendant Long states that the resultant injuries must be serious and reasonably foreseeable. (Defendant Long's Motion for Sanctions, Page 17.) Because plaintiff Stone has not alleged facts to make out a colorable claim in this area, defendant Long requests that the

court sanction Penamon for filing and proceeding upon a nonexistent claim. (Defendant Long's Motion for Sanctions, Page 17.)

The court finds that in his complaint, plaintiff Stone prays for "judgment against defendant Doris Jean Long, for compensatory damages in the sum of Seven Thousand Dollars ($7,000), his costs, attorney's fees and interest and for such other relief, **including damages for violation of a statute of the State of Ohio, as the court may find appropriate.**" (Emphasis added.) (Plaintiffs' Complaint, Pages 4–5.) The court finds this language to be vague and overly expansive. Basically, the complaint asserts that if any violation of a statute occurred, plaintiff Stone is entitled to recovery. Nevertheless, the court is able to deduce from plaintiff Stone's Trial Brief that plaintiff Stone intended to present claims against defendant Long under the theories of civil conspiracy, civil aiding-abetting, and fraud. (Plaintiff Stone's Trial Brief, Pages, 6–7.) Under civil conspiracy, plaintiff Stone alleges that defendant House of Day and defendant Long participated in the unlawful acts of negligence, interference with dead bodies, and intentional interference with a contract by cremating the remains of Leola Simpson. The court finds that nowhere in the case file does Penamon advance the claim of wrongful burial against defendant Long. As to the claim of negligence, although it is doubtful that plaintiff Stone would have prevailed on such a claim, the court cannot find that Penamon did not harbor good grounds to support such a claim to the best of his knowledge, information, and belief. Therefore, defendant Long's fifth allegation is found not well taken and denied.

With respect to the sixth allegation, defendant Long alleges that only the personal representative of the decedent can bring a claim of wrongful possession of a dead body. Because Bobby Ray Stone is not the personal representative of the estate of Leola Simpson, defendant Long argues that this claim is not warranted under existing law. (Defendant Long's Motion for Sanctions, Page 17.) The court finds that pursuant to R.C. 1713.39:

"A person * * * having unlawful possession of the body of a deceased person shall be jointly and severally liable with any other persons * * * that have had unlawful possession of such body, in any sum not less than five hundred nor more than five thousand dollars, **to be recovered at the suit of the personal representative of the deceased** in any court of competent jurisdiction, for the benefit of the next of kin of the deceased." (Emphasis added.)

As noted above in response to the first allegation, defendant Long was the court-approved personal representative of the estate of Leola Simpson, not plaintiff Stone. Moreover, Penamon had actual knowledge of this ruling. Therefore, Penamon willfully violated Civ.R. 11 when he filed the claim of wrongful possession of a dead body against defendant Long. Therefore, any expenses and

reasonable attorney fees incurred by defendant Long as a result of Penamon filing and pursuing the claim of wrongful possession of a dead body, including any expenses and reasonable attorney fees incurred in bringing this motion, are hereby assessed to Penamon as appropriate sanctions for willfully violating Civ.R. 11.

Moreover, the court finds that Penamon engaged in frivolous conduct by filing and pursuing the claim of wrongful possession of a dead body against defendant Long because the claim is not warranted under existing law. Further, the claim cannot be supported by a good faith argument for an extension, modification, or reversal of existing law. Additionally, the claim cannot be supported by a good faith argument for the establishment of new law. Because Penamon engaged in frivolous conduct, the court finds that Penamon's actions increased the cost of litigation for defendant Long; thus, adversely affecting defendant Long. Therefore, any expenses and reasonable attorney fees incurred by defendant Long as a result of Penamon filing and pursuing the claim of wrongful possession of a dead body, including any expenses and reasonable attorney fees incurred in bringing this motion, are hereby assessed to Penamon as appropriate sanctions for engaging in frivolous conduct pursuant to R.C. 2323.51.

With respect to the seventh allegation, defendant Long alleges that the criminal offense of abuse of a corpse requires treatment of a human corpse in a way that would outrage reasonable family or community sensibilities, and was intended to prevent grave robbing, unlawful dissection, and copulating with a dead body. Further, defendant Long claims that nowhere in Penamon's allegations is such action alleged; therefore, filing and proceeding under this claim is sanctionable under Civ.R. 11. (Defendant Long's Motion for Sanctions, pages 1–18.) As noted above, the language in plaintiff Stone's Complaint is vague and overly broad. However, plaintiff Stone's Trial Brief sets forth claims against defendant Long under civil conspiracy for participation in the unlawful acts of negligence, interference with dead bodies, and intentional interference with a contract. The court finds that nowhere in the case file does Penamon advance the claim of criminal abuse of a corpse against defendant Long. Therefore, defendant Long's seventh allegation is found not well taken and denied.

With respect to the eighth allegation, defendant Long asserts that the claim of intentional infliction of emotional distress is unfounded because plaintiff Stone has never alleged "extreme and outrageous" conduct. Further, defendant Long argues that because plaintiff Stone never alleged that defendant Long intended to cause such distress, or should have known such distress would result, Penamon's filing and proceeding on a claim of intentional infliction of emotional distress is sanctionable under Civ.R. 11. (Defendant Long's Motion for Sanctions, Page 18.) As noted above, the language in plaintiff Stone's complaint is vague and overly

broad. However, plaintiff Stone's trial brief sets forth claims against defendant Long under civil conspiracy for participation in the unlawful acts of negligence, interference with dead bodies, and intentional interference with a contract. The court finds that nowhere in the case file does Penamon advance the claim of intentional infliction of emotional distress against defendant Long. Therefore, defendant Long's eighth allegation is found not well taken and denied.

With respect to the ninth allegation, defendant Long alleges that Penamon's filing and proceeding on a claim of intentional interference with contractual relations is also sanctionable under Civ.R. 11 because the facts of the complaint, even if true, do not amount to the commission of this tort. (Defendant Long's Motion for Sanctions, Page 18.) Although it is doubtful that plaintiff Stone would have prevailed on a claim of intentional interference with contractual relations, the court cannot find that Penamon did not harbor good grounds to support such a claim to the best of his knowledge, information, and belief. Therefore, defendant Long's ninth allegation is found not well taken and denied.

With respect to the tenth allegation, defendant Long asserts that Penamon's filing and proceeding on a claim of civil conspiracy warrants sanctions because civil conspiracy requires an underlying unlawful act, and plaintiff Stone has alleged no unlawful acts. Additionally, defendant Long claims that plaintiff Stone presented no claim of actual damage, a required element of a civil conspiracy. (Defendant Long's Motion for Sanctions, Page 18.) The court finds that plaintiff Stone's trial brief sets forth the claim of civil conspiracy against defendant Long. (Plaintiff Stone's Trial Brief, Page 6.) Under civil conspiracy, plaintiff Stone alleges that defendants House of Day and Doris Jean Long participated in the unlawful acts of negligence, interference with dead bodies, and intentional interference with a contract by cremating the remains of Leola Simpson. Additionally, plaintiff Stone asserts that the withholding of the remains of Leola Simpson caused injury to plaintiff. Although it is doubtful that plaintiff Stone would have prevailed on such a claim, the court cannot find that Penamon did not harbor good grounds to support such a claim to the best of his knowledge, information, and belief. Therefore, defendant Long's tenth allegation is found not well taken and denied.

Based upon these findings of fact and conclusions of law, defendant Long's motion for sanctions is found well taken in part, and defendant Long is awarded judgment against Penamon for violating Civ.R. 11 and engaging in frivolous conduct pursuant to R.C. 2323.51. The court hereby finds that $1,500 is reasonable attorney fees to be assessed to Penamon.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that defendant Long is hereby granted judgment against Penamon in the amount of $1,500

as appropriate sanctions for violating Civ.R. 11 and engaging in frivolous conduct pursuant to R.C. 2323.51.

The court further finds that this is a final determination of all of the rights of the parties and that this is a final, appealable order. The clerk shall so journalize and notify all parties and their counsel of this order.

*Judgment accordingly.*